Number of pages 9
Received on 3/9/2022
Scanned/emailed on 3/9/2022
by S. Tomlinson at SVSP
for the Northern District of California.

Plaintiff's Name Javontae Valentine
Prisoner No. AB5764
Institutional Address P.O. Box 1050
Soledad, California
93960

**FILED**
Mar 10 2022
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

Javontae Valentine,
*(Enter your full name)*
v.

A. Torres-Quezada, N. Reveles,
M. Reyes-Diaz, A. Cervantez,
A. Camacho

*(Enterthe full name(s) of all defendants in this action)*

Case No. 5:22-cv-1520-NC
*(Provided by the clerk upon filing)*

**COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983**

## I. Exhaustion of Administrative Remedies.

*You must exhaust available administrative remedies before your claim can go forward. The court will dismiss any unexhausted claims.*

A. Place of present confinement Salinas Valley State Prison

**B.** Is there a grievance procedure in this institution? ☒ **YES** ☐ **NO**

C. If so, did you present the facts in your complaint for review through the grievance procedure?
☒ **YES** ☐ **NO**

D. If your answer is YES, list the appeal number and the date and result of the appeal at each level of review. If you did not pursue any available level of appeal, explain why.

1. Informal appeal: No Informal Level Required

2. First formal level: Institutional level CDCR-602 Log No. 186496 and CDCR602 Log No. 159413

3. Second formal level: CDCR no longer has a second level. Just Institutional Level and Office of Appeals level as of 2020 June.

4. Third formal level: Completed

E. Is the last level to which you appealed the highest level of appeal available to you?
☒ YES ☐ NO

F. If you did not present your claim for review through the grievance procedure, explain why.
N/A

## II. Parties.

A. If there are additional plaintiffs besides you, write their name(s) and present address(es).

All named defendants are Correctional Officers employed by the California Department of Corrections and rehabilitations (CDCR) and were assigned at Salinas Valley State Prison at time of incident in Soledad California

B. For each defendant, provide full name, official position and place of employment.
A, Torres-Quezada, Correctional officer SVSP)
N. Releves, Correctional Officer (SVSP)
M. Reyes-Diaz, Correctional Officer (SVSP)
A, Cervantez, Correctional Officer (SVSP)
A. Camacho, Correctional Officer (SVSP)

## III. Statement of Claim.

State briefly the facts of your case. Be sure to describe how each defendant is involved and to include dates, when possible. Do not give any legal arguments or cite any cases or statutes. If you have more than one claim, each claim should be set forth in a separate numbered paragraph.

SEE ATTACHED ADDITIONAL SHEETS FOR DETAILS

PLEASE SEE ATTACHED SHEETS

## IV. Relief.

Your complaint must include a request for specific relief. State briefly exactly what you want the court to do for you. Do not make legal arguments and do not cite any cases or statutes.

(1) Compensatory damages from each defendant in the amount of $500,000 ;

(2) Punitive damages in the amount of $4,000,000,00;

(3) Placement of body worn cameras on Salinas Valley State Prison guards;

(4) Order that Salinas Valley State Prison deversify it's Correctional Staff and employees by hirering more African-Americans;

(5) Order that defendants and their employer ban the prone-out position.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on: 3 · 7 · 22 (Date) [signature] (Signature of Plaintiff)

STATEMENT OF CLAIM

On the date of August 12, 2021, the Plaintiff, Jovantae Valentine ("here and after Plaintiff") was a prisoner of the state of California and was confined in the California Department of Corrections and Rehabilitations (CDCR) at Salinas Valley State Prison (SVSP) in Soledad California.

At approximately 0830 hours on August 12, 2021, Plaintiff Valentine was recreating on the Facility "B" yard when he observed a disturbance (i.e., a fight) break out between several African-American prisoners on the yard in front of building number #2.

At the moment that the fighting errupted Plaintiff was not in the immediate vicinity of the disturbance. Plaintiff was on the opposite side of the prison yards barrier fence which saperates buildings #1 and building #2, from building #3 and building #4. This fence runs down the middle of the prison yard.

When the tower guard and/or other guard spotted the disturbance and an announcement was made for everyone to "get down" (i.e., to sit down) Plaintiff moved at a hurried pace in the opposite direction away from the fighting to sit down on a bench in front of building #4 approximately seventy plusyards from the fighting. When the fighting broke out Plaintiff was already at least 40 to 50 yards away from the incident

After Plaintiff had been sitting on the bench for a few minutes while correctional officers were responding to and restoring order nearest where the fighting had taken place, Defendants A. Torres-Quezada and Defendant M. Reyes-Diaz, approached Plaintiff where he was sitting on the bench and ordered him to sit on the ground. Plaintiff stood up from his sitting position on the bench and was moving to a safe location keeping some distance from other inmates to sit on the ground. While in the process of doing this safety protocol manuever, Plaintiff was grabbed by Defendant Torres-Quezada and Defendant Reyes-Diaz. Each Defendant grabbed one of Plaintiff's arms each and pulled them behind Plaintiff's back. Simultaneously another guard, Defendant N. Reveles approached Plaintiff and discharged a chemical agent known as Oleresin Capsicum (O.C.)

into Plaintiff's facial area rendering him incapacitated.

The next event which tookplace after Plaintiff's hands were being held and he was incapacitated by pepper-spray was Plaintiff recall of hitting the ground face-first and losing consciousness.

When Plaintiff regained conscientness he felt himself being kicked and struck and a heavy weight on top of him pinning his body to the ground. Plaintiff discovered at a later date that the weight which was pinning him to the ground was Defendant A. Cervantez and Defendant A. Camacho.

After laying on the ground for several minutes in a prone position on his stomach with pepper-spray in his face and having trouble breathing, Plaintiff was pulled up to he feet. While on his feet an guard took photographs of Plaintiff before he was escorted to the gymnasium and allowed to rinse his face.

After Plaintiff had rinsed his face of pepper-spray he was examined by a medical staff who documented plaintiff's visible injuries on a form CDCR-7219. Plaintiff examination at this time revealed that he have numerous scratches and abrasions to his facicial area and both elbows. Plaintiff informed the medical examiner that he was in pain and that the believed that his nose was broke.

Plaintiff Valentine was later taken to an outside hospital where xrays, MRI and CT scan was performed on his facial area. The results and findings were that Plaintiff had a bone fracture to his nasal area.

As a result of the bone fracture Plaintiff has had to undergo treatment to his nose and be placed on medications in order to asisst with his breathing through his nose.

Plaintiff claims that Defendant A. Torres-Quezada is liable for Plaintiff's injures when he and Defendant M. Reyes-Diaz intentionally tripped Plaintiff to the ground face-first while at the same time maintaing controlof Plaintiff's arms preventing him from mitigating his fall and causing injury to his face and nose.

Plaintiff claims Defendant M. Reyes-Diaz is equally liable for the same act as Defendant Torres-Quezada.and that both Torres-Quezada and Reyes-Diaz acted in concert.

Plaintiff claim that Defendant N. Reveles is liable for his unnecessary use of a chemical agent O.C. peppery-spray on Plaintiff in a recklessmanner which exabated the incident and causing other guards to use force beyond what was necessary and legal.

Plaintiff A. Cervantez and A. Camacho are liable for use of unnecessary for by placing their knees in Plaintiff's back as he lie proned-out on his stomach in restraints and incapacitated by pepper-spray and a concussion. They are also liable for acting in concert to use unnecessary force and falsifying a police report in violation of California Penal Code § 118.

All defendants are charged by Plaintiff with violating his Constitutional Rights protected under the Eight and fourteenth Amendment to the United States constitution.

## REQUESTED RELIEF

Plaintiff is requesting Defendants compensate Plaintiff for his injuries and mental and psychological stress in the amount of five hundred thousand dollars from each defendant.

Plaintiff further seeks punitive damages from defendants in the amount of four million dollars.

Plaintiff further seeks an injunction against defendants enjoining them from further use of the prone position in or our of restraints as defendants have been using this

use of body weight, forced to the ground technique at Salinas valley State Prison to seriously injure inmates by their landing on their face unable to mitigate the impact because their arms are restrained.

Plaintiff ask for another injunction; that this court issue an immediate temporary order that all SVSP guards wear body worn cameras. SVSP is the only level four maximum security 180° that was not ordered to have staff wear body cameras in the Armstrong v. Newsom U.S.D.C. ND. Cal April 9th, 2021 remedial order. SVSP has a sorted history of prison guard misconduct and excessive use of force dating back to the time that the prison opened. In 2004 it was Investigated for guards involved in gang activity (Green Wall) and in 2017-2019 investigated by the Office of Inspector general (OIG) for mishandling prisoner complaints for guard use of force complaints.

Plaintiff ask that this Court lastly order defendants and their superiors to diversify it's employees and hire more African-American employees to work as guards at SVSP.

VERIFICATION

I, Jovantae Valentine, herby declare that the foregoing is true and correct dated this 7 day of MARCH, 2022, at Soledad, California.

/S/
Jovantae Valentine
Plaintiff In Pro Se

TBWT81075

* Auth (Verified) *

Name: **Valentine** Number: **AB5764** Housing: **B2-105** CDCR-128-C

Review of the Unit Health Record (UHR) of Inmate Valentine, CDCR#AB5764, reveals that this inmate was examined by medical staff and he was found to have the injuries described below on 08/12/2021. This information is provided at the request of custody staff pursuant to California Code of Regulations, Title 15, Section 3000 definition of "Serious Bodily Injury Definition."

- ☐ Loss of Consciousness
- ☒ Bone Fracture
- ☐ Concussion
- ☐ Disfigurement
- ☐ A wound requiring suturing (specific location of laceration and numbers of sutures)__________
- ☐ Protracted loss of impairment of function of any bodily member or organ (including teeth) (specify affected organ or bodily member)__________ (specify)
- ☐ No serious injury documented

Incident # 26265

Kumar MD (signature)

KUMAR MD (CMO) (print name and title) 8/13/21 (date)

Original:

C-File
eUHR
Inmate
Incident Commander
Facility Captain

SALINAS VALLEY STATE PRISON
AUG 16 2021
H.I.M.

Salinas Valley State Prison

**SBI Medical Evaluation Chrono**

**CDCR**
**REPORT NO. IRTR161 - 12**

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000026265**

**PAGE:** 49
**PROCESSED:** 08/14/2021 07:24
**REQUESTOR:** P. Soto

## STAFF NARRATIVE

**STAFF NAME:** Soto, [redacted]
**CREATED DATE:** 08/12/2021

**NARRATIVE TYPE:** Initial Report
**CREATED TIME:** 20:19:50

### NARRATIVE

On August 12, 2021, at approximately 0838 hours, while performing my duties as Facility B Program Sergeant, I was in housing unit B2 supervising custody staff conducting mass cell searches when I heard an announcement over the institutional radio "Code 1, B Yard, 3 on 1 Fight." As I was responding to the Facility B Recreational Yard, I observed multiple officers engaged in a physical altercation with an inmate on the ground in front of housing unit B4. Instead of responding to the original incident, I diverted and responded to the altercation in front of B4. Due to the number of inmates on the yard and current responding staff dealing with multiple incidents, I utilized my institutional radio and requested a Code 2 response to assist with security coverage of the remaining uninvolved inmates. As I arrived to the scene, I observed Officers A. Camacho, M. Reyes Diaz and A. Torres-Quezada utilizing physical holds on an unidentified inmate (who was restrained with hand cuffs and leg restraints) to maintain him in a prone position on the ground. The involved inmate was later positively identified by using his state issued identification card as Inmate VALENTINE (AB5764, B2-105U). At this time, Inmate VALENTINE was complying with staff's orders and was not resisting, by laying still on the ground. I instructed staff to place Inmate VALENTINE into a seated position. I made contact with Officer Torres-Quezada, who informed me he was attempting to place Inmate VALENTINE in restraints due to not complying with staff's orders to get down on the ground during the first incident. As Officer Torres-Quezada approached Inmate VALENTINE, he turned around and battered him, by striking him in the facial and upper torso area several times with his closed fists. Officer Torres-Quezada and Reyes Diaz utilized physical strength and holds to force Inmate VALENTINE to the ground in order to apply restraints. I instructed Officer Torres-Quezada to report to the Facility B Medical Clinic for evaluation, escorted by Officer Reyes Diaz. I heard another announcement made over the institutional radio of another battery on peace officer, on the Facility B Patio. Investigative Services Unit (ISU) staff responded to my area and collected photographic evidence of the crime scene. Once ISU Staff had concluded their investigation, Officers R. Castillo and D. Bittner assisted Inmate VALENTINE to his feet and escorted him to the Facility B Gym for temporary holding cell placement, decontamination and medical evaluation. I returned to the skirmish line and assisted with maintaining observation of the rest of the yard. Once all of the involved inmates were escorted off the yard and secured in the Facility B Gym, Correctional Sergeant M. Barroso notified Central Control of the nature of the Code 2 on B Yard and we were now Code 4. All noninvolved inmates in the vicinity of the deployment areas were offered decontamination and clean clothing, which all refused. Both areas of the yard where chemical agents were utilized, was thoroughly decontaminated with copious amounts of water. I returned to housing unit B2 to supervise staff conducting mass cell searches.

P. Soto
STAFF SIGNATURE

**DATE:** 08/12/2021

**BADGE #:** [redacted]

**PERNR:** [redacted]

**NARRATIVE REVIEWED:** Yes
**REVIEWED DATE:** 08/12/2021

**REVIEWED BY STAFF:** Poodry, [redacted]
**REVIEWED TIME:** 20:25:24

# CIVIL COMPLAINT